**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MICHELINE DUCENA,<br><br>　　　　　　　　Debtor. | FOR PUBLICATION<br><br>Chapter 13<br><br>Case No. 25-11985 (JPM) |

*APPEARANCES*

**MICHELINE DUCENA**
*Pro Se Debtor*
2909 Cambridge Ln.
Hollywood, FL 33026
By: Alain Ayoub, as Attorney-in-Fact

**CHAPTER 13 TRUSTEE**
*Standing Chapter 13 Trustee*
399 Knollwood Rd., Ste. 102
White Plains, NY 10603
By: Thomas C. Frost

**UNITED STATES TRUSTEE**
*Office of the U.S. Trustee, Region 2*
Alexander Hamilton Custom House
One Bowling Green, Rm. 534
New York, NY 10004

**MEMORANDUM OPINION AND ORDER GRANTING THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS**

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

**I.     INTRODUCTION**

The debtor Micheline Ducena (the "**Debtor**") commenced this Chapter 13 case *pro se*, acting through her son, Alain Ayoub ("**Mr. Ayoub**"), pursuant to a power of attorney.[1] Before the Court is the Chapter 13 Trustee's (the "**Trustee**") motion to dismiss under 11 U.S.C. § 1307, dated September 22, 2025 (the "**Motion**"). (Dkt. No. 15). The Motion asserts, *inter alia*, that the Debtor failed to file documents required by § 521(a)(1) and that the petition was filed in bad faith, in violation of § 1325(a)(3). (*Id*.) The Trustee also requests a one-year injunction barring the Debtor from refiling in any district. (*Id*.)

The Court held a hearing on the Motion on December 18, 2025 (the "**Hearing**"). At the Hearing, Mr. Ayoub appeared on behalf of the Debtor and opposed dismissal. (*See* Dec. 18, 2025 Hr'g.). Party in interest Yellow Grapes LLC ("**Yellow Grapes**") supported the Trustee and asserts that, if the Court denies dismissal, Yellow Grapes will seek relief from the automatic stay and *in rem* relief against the Debtor's property. (*Id*.; Dkt. No. 16).

The Court has reviewed all relevant filings, the arguments presented at the Hearing, and the record as a whole. For the reasons set forth below, the Motion is **GRANTED**.

**II.    BACKGROUND**

**A.  THE FLORIDA FORECLOSURE PROCEEDING**

The Debtor owned residential property located at 17781 SW 113th Ave, Miami, Florida (the "**Property**"), encumbered by a mortgage with an original principal balance of approximately

---

[1] The Debtor filed two Chapter 13 cases under the same name. References to "Dkt. No. _" are filings in this Chapter 13 case, *In re Micheline Ducena*, No. 25-11985-jpm (Bankr. S.D.N.Y. filed Sept. 11, 2025). References to "Prior Case Dkt. No. _" are filings in the Debtor's prior, duplicative Chapter 13 case, *In re Micheline Ducena*, No. 25-11625-pb (Bankr. S.D.N.Y. filed July 24, 2025), which was closed on December 30, 2025.

2

$300,000. (Dkt. No. 1). On August 30, 2024, mortgagee Deutsche Bank National Trust Company ("**Deutsche Bank**") commenced a foreclosure action against the Debtor in the Circuit Court of the Eleventh Judicial Circuit, Miami-Dade County, Florida (the "**Florida Court**"). *See Deutsche Bank Nat'l Tr. Co. v. Ducena*, No. 2024-016658-CA-01 (Fla. 11th Cir. Ct. Miami-Dade Cty. Aug. 30, 2024) (the "**Foreclosure Proceeding**"). (Dkt. No. 16, ¶ 8). On March 27, 2025, the Florida Court entered a final judgment of foreclosure (the "**Foreclosure Judgment**"), finding arrears in the amount of $324,720.79, including accrued interest and costs. (*Id*. Ex. A). Pursuant to the Foreclosure Judgment, the Florida Court issued a notice of judicial sale on May 12, 2025 (*Id*. Ex. B), scheduling a foreclosure auction for June 9, 2025. (*Id*. Ex. C).

Yellow Grapes was the successful bidder at the June 9, 2025 foreclosure auction. (*Id*. ¶ 9) Under the terms of sale, Yellow Grapes tendered the full purchase price of $331,400 on June 11, 2025. (*Id*. Ex. D). A proof of payment and certificate of sale were filed on June 12, 2025, which, under applicable Florida law, evidence the transfer of ownership from the Debtor to Yellow Grapes. (*Id*. ¶¶ 9, 26) (citing Fla. Stat. § 45.0315 (2024)).

On June 22, 2025, the Debtor filed an objection to foreclosure sale and a motion to vacate the certificate of sale in the Foreclosure Proceeding (the "**Sale Objection**"). (*Id*. ¶ 10; *see also id*. Ex. E). The Debtor claimed that the sale was procedurally defective because she "was not properly served and received no notice of [the] foreclosure action while residing in an assisted living facility due to medical issues." (*Id*.) The Florida Court held a hearing on July 24, 2025, and denied the Debtor's motion on July 25, 2025. (*Id*. Ex. F).

### B. THE FIRST CHAPTER 13 CASE

On July 24, 2025—the same day the Florida Court denied the Debtor's Sale Objection— the Debtor, proceeding *pro se*, filed a voluntary petition for Chapter 13 bankruptcy in this District.

3

(*Id*. ¶ 12); *see In re Micheline Ducena*, No. 25-11625-pb (Bankr. S.D.N.Y. July 24, 2025) (Prior Case Dkt. No. 1) (the "**First Case**"). The Debtor claims to be incapacitated and has proceeded through her son, Mr. Ayoub, who purports to act on her behalf under a power of attorney. (Prior Case Dkt. No. 1). No certified power-of-attorney documentation was filed with the Court. Although the Debtor, the Property, and Yellow Grapes are all located in Florida, Mr. Ayoub resides in New York, which appears to be the sole connection between the Debtor and this District. (Dkt. No. 16, ¶ 12).

On July 25, 2025, a deficiency notice was docketed in the First Case. (Prior Case Dkt. No. 8). The notice identified numerous missing documents required by § 521(i), including: (1) a statement of monthly income and calculation of commitment period; (2) a Chapter 13 model plan; (3) a certificate of credit counseling; (4) schedules A/B, C, D, E/F, G, H, I, J; (5) statement of financial affairs; and (6) summary of assets and liabilities. (*Id*.) The deficiency notice indicated that the Debtor had 45 days to cure and that the Court scheduled a hearing on automatic dismissal for September 11, 2025. (Prior Case Dkt. No. 7).

On August 25, 2025, Yellow Grapes moved for relief from the automatic stay (the "**First Stay Relief Motion**"), arguing, among other things, that the case was "filed in bad faith" given the Debtor's failure to complete credit counseling, file required documents, and appear at the § 341 meeting of creditors. (Prior Case Dkt. No. 17) The Court held a hearing on September 11, 2025. (Dkt. No. 29). At the hearing, Mr. Ayoub argued that the Yellow Grapes willfully violated the automatic stay by executing a certificate of sale. (*Id*.) Yellow Grapes responded that the First Case was void *ab initio* due to the Debtor's failure to complete credit counseling and to file the required disclosures under § 521(i). (*Id*.) The Court found that the Debtor had not cured any filing deficiencies, and the 45-day deadline has lapsed. (*Id*.) The Court retained jurisdiction to consider

4

whether the First Case was void *ab initio* and whether the automatic stay was willfully violated. (*Id.*) On September 29, 2025, the Court entered an order dismissing the case under § 521(i)(1) and denied the First Stay Relief Motion as moot. (*Id.*)

### C. THE SECOND CHAPTER 13 CASE

On September 11, 2025, before the First Case was dismissed, the Debtor filed a second Chapter 13 petition in this District—the instant case. *See In re Micheline Ducena*, No. 25-11985-jpm (Bankr. S.D.N.Y. Sept. 11, 2025) (Dkt. No. 1) (the "**Second Case**"). The Debtor again proceeded *pro se* through Mr. Ayoub. (*Id.*) This time, the Debtor filed a power of attorney with the Court. (Dkt. No. 26). However, the power of attorney is dated October 8, 2025, nearly a month after the petition date. (*Id.*)

On the petition date, a deficiency notice was docketed in the Second Case. (Dkt. No. 5). As in the First Case, the Debtor failed to file the requisite documents, including the statement of current monthly income, the credit-counseling certificate, schedules A/B through J, the statement of financial affairs, and the summary of assets and liabilities. (*Id.*) The deadline for curing those deficiencies was September 25, 2025. (*Id.*)

Also on September 11, 2025, the Debtor moved for a waiver of the credit-counseling requirement. (Dkt. No. 2). Although credit counseling is generally a prerequisite to debtor eligibility, Mr. Ayoub asserts that the Debtor is exempt under § 109(h)(4) because she has a "mental illness that makes [her] incapable of realizing or making rational decisions about finances." (*Id.*)

On September 22, 2025, the Trustee filed the instant Motion to Dismiss. (Dkt. No. 15). The Trustee argues that dismissal is warranted under § 1307(c) because the Debtor's serial filings reflect bad faith, and because the Debtor had not cured the deficiencies identified in the deficiency notice. (Dkt. No. 15). The Trustee further contends that the Second Case is void *ab initio* because

5

it was filed while the First Case remained pending, in violation of the Second Circuit's single estate rule. (*Id.*)

On September 24, 2025, Yellow Grapes moved for relief from the automatic stay in the Second Case (the "**Second Stay Relief Motion**"). (Dkt. No. 16). The motion largely reiterates the arguments raised in the First Case, but additionally seeks *in rem* relief against the Property under § 362(d)(4)(B) and a two-year injunction barring the Debtor from refiling in any district. (*Id.* ¶¶ 49-50). Yellow Grapes argues that the Second Case repeats the same filing deficiencies and likewise evidences bad faith. (*Id.* ¶ 57).

On December 18, 2025, the Court held a hearing on the pending motions. (*See* Dec. 18, 2025 Hr'g.) At the hearing, the Trustee questioned Mr. Ayoub's authority to appear on the Debtor's behalf, noting that the power of attorney was signed after the Second Case commenced. (*Id.*) Yellow Grapes supported the Trustee's Motion. (*Id.*) Mr. Ayoub acknowledged the timing issue and stated that he would seek counsel to address the arguments raised by the Trustee and Yellow Grapes. (*Id.*) To date, no attorney has filed a notice of appearance for the Debtor.

### III. <u>LEGAL STANDARD</u>

#### A. SINGLE ESTATE RULE

The Bankruptcy Code does not expressly address whether a debtor may simultaneously maintain two or more cases. In the absence of statutory guidance, courts have split into two camps. *See In re Lord*, 295 B.R. 16, 18 (Bankr. E.D.N.Y. 2003).

The majority view holds that "only one bankruptcy case may be pending at a time for a given debtor." *See, e.g., In re Heywood*, 39 B.R. 910, 911 (Bankr. W.D.N.Y. 1984); *In re Fulks*, 93 B.R. 274, 275 (Bank. M.D. Fla. 1988); *In re Smith*, 85 B.R. 872, 874 (Bankr. W.D. Okla. 1988); *In re Barnes*, 231 B.R. 482, 483-85 (E.D.N.Y. 1999). Adopted in the Second Circuit, that approach

6

rests on the principle that "a debtor possesses only one estate for the purpose of trusteeship and each bankruptcy must be administered as a single estate under a single chapter of the Bankruptcy Code." *In re Turner*, 207 B.R. 373, 378 (B.A.P. 2d Cir. 1997). Under this "single estate rule," a case filed while another case remains pending is a *per se* violation and is void *ab initio*. *See Fuschi v. Bank of New York Mellon Tr. Co.*, 2024 WL 4326942, at *3 (Bankr. S.D.N.Y. Sept. 27, 2024) (granting dismissal violating the single estate rule); *see also In re Truong*, 2009 WL 2929261, at *5 (Bankr. S.D.N.Y. Sept. 3, 2009) (granting dismissal for violating the single estate rule). The rationale behind *Turner*'s *per se* rule is that the later-filed case is "null and void from its inception and subject to dismissal[.]" *Turner*, 207 B.R. at 379.

A minority of courts have "declined to adopt a *per se* rule against simultaneous filings[.]" *In re Lord*, 295 B.R. at 18 (collecting cases). Some courts have permitted limited exceptions to the single estate rule where the debtor files cases under different chapters of the Code to address distinct needs—most commonly, filing a Chapter 13 case to address debts surviving a Chapter 7 discharge before the Chapter 7 case is closed. *See, e.g.*, *In re Hodurski*, 156 B.R. 353 (Bankr. D. Mass. 1993); *In re Kosenka*, 104 B.R. 40 (Bankr. N.D. Ind. 1989); *In re Strause*, 97 B.R. 22 (Bankr. S.D. Cal. 1989). However, where both cases arise under the same chapter, there is a "universal agreement" that filing a second petition "before receiving a discharge in the original … case" renders the second petition "a nullity." *Fuschi*, 2024 WL 4326942, at *5 (quoting *Turner*, 207 B.R. at 378). Courts applying the majority rule have dismissed later-filed cases and, where warranted, imposed refiling bars. *See, e.g.*, *In re Rice*, 2025 WL 1703704 (Bankr. W.D.N.C. June 17, 2025) (dismissing the debtor's second Chapter 13 case and imposing a 180-day bar on refiling). Although the Supreme Court has not directly addressed simultaneous filings under the Code, it has long held

7

that "the pendency of the first [case] preclude[s] a consideration of the second in respect of the same debts." *Freshman v. Atkins*, 269 U.S. 121, 122 (1925).

*Turner* is binding upon this Court. Thus, when a debtor files a second Chapter 13 petition while a prior Chapter 13 case remains pending, the later-filed case violates the single estate rule and is void *ab initio*. *See Turner*, 207 B.R. at 378-79; *see also Fuschi*, 2024 WL 4326942, at *3.

### B. DISMISSAL UNDER § 1307

Section 1307(c) of the Bankruptcy Code authorizes a court, on request of a party in interest or the United States Trustee and after a notice and hearing, to dismiss a Chapter 13 case or convert it to Chapter 7 "for cause," whichever "is in the best interests of creditors and the estate." 11 U.S.C. § 1307(c). The statute enumerates eleven grounds that constitute "cause":

(1) unreasonable delay by the debtor that is prejudicial to creditors;
(2) nonpayment of any fees and charges required under chapter 123 of title 28;
(3) failure to file a plan timely under section 1321 of this title;
(4) failure to commence making timely payments under section 1326 of this title;
(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
(6) material default by the debtor with respect to a term of a confirmed plan;
(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);
(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or
(11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1307(c). "The grounds enumerated in subsections 1307(c)(1) through (11) are not exhaustive." COLLIER ON BANKRUPTCY ¶ 1307.04 (16th Ed. 2016).

8

Bad faith, though "not specifically stated in the statute," is "considered 'cause' to convert or dismiss" under § 1307(c). *In re Armstrong*, 409 B.R. 629, 633 (Bankr. E.D.N.Y. 2009) (quoting *In re Marrama*, 549 U.S. 365, 373 (2007)); *see also In re Prisco*, 2012 WL 4364311, at *4 (N.D.N.Y. Sept. 24, 2012), *aff'd*, 574 Fed. Appx. 19 (2d Cir. 2014). "Bad faith may be found where[,] at the time of filing, there is 'no reasonable probability of emerging from bankruptcy or successfully reorganizing,' or 'where there is evidence of an intent to delay or frustrate the efforts of secured creditors to enforce their legitimate rights.'" *In re Froman*, 566 B.R. 641, 647 (S.D.N.Y. 2017) (quoting *In re C-TC 9th Avenue Partnership*, 113 F.3d 1304, 1310 (2d Cir. 1997) and *In re Northtown Realty Co., L.P.*, 215 B.R. 906, 914 (Bankr. E.D.N.Y. 1998)). In *JJ Arch*, this Court explained that the "critical test" for bad faith consists of two inquiries: (1) whether there was "no reasonable likelihood that the debtor intended to reorganize" (the "subjective bad faith" prong); and (2) whether there was "no reasonable possibility that the debtor will emerge from bankruptcy" (the "objective futility" prong). *In re JJ Arch LLC*, 663 B.R. 258, 281 (Bankr. S.D.N.Y. 2024) (citing *In re Hudson 888 Owner LLC*, 2024 WL 1145664, at *4 (Bankr. S.D.N.Y. Mar. 15, 2024)); *see also Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir. 1991)); *In re Loco Realty Corp.*, 2009 WL 2883050, at *3 (Bankr. S.D.N.Y. June 25, 2009).

In determining whether a petition was filed in bad faith, courts examine "the totality of the circumstances," focusing on whether the filing reflects "an intent to abuse the judicial process" or "the purpose of the reorganization process." *Clear Blue Water, LLC v. Oyster Bay Mgmt. Co., LLC*, 476 B.R. 60, 68 (E.D.N.Y. 2012); *see also In re Eatman*, 182 B.R. 386, 392 (Bankr. S.D.N.Y. 1995). Relevant factors that inform a court's determination include:

> (1) whether the debtor has few or no secured creditors; (2) whether there has been a previous petition filed by the debtor or a related entity; (3) whether the debtor's

9

> conduct pre-petition was property; (4) whether the petition permits the debtor to evade court orders; (5) whether the petition was filed on the eve of foreclosure; (6) whether the foreclosed property is the sole or major asset of the debtor; (7) whether thee debtor's income is sufficient such that there is likely possibility of reorganization; (8) whether the reorganization essentially involves the resolution of a two party dispute; and (9) whether the debtor filed solely to obtain the protection of the automatic stay.

*Froman*, 566 B.R. at 647-48 (citing *In re Cornelius*, 195 B.R. 831, 836 (Bankr. N.D.N.Y. 1995); *see also Campora v. HSBC Bank USA, N.A. (In re Campora)*, 2015 WL 5178823, at *11 n.10 (E.D.N.Y. Sept. 3, 2015) (listing similar factors). "The existence of 'bad faith' depends not on any one specific factor but on a combination of factors determined after careful examination of the facts of the particular debtor's case." *In re 68 West 127 Street, LLC*, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002).

"The determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court." *In re Taylor*, 628 B.R. 1, 7 (Bankr. D. Conn. 2021) (citing *Prisco*, 2012 WL 4364311, at *4). In connection with dismissal, bankruptcy courts also "have discretion to bar re-filing of a bankruptcy action of a year or longer." *Wenegieme v. Macco*, 580 B.R. 17, 24 (E.D.N.Y. 2018) (citing *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 339 (2d Cir. 1999)); *accord Leavitt v. Soto (In re Leavitt)*, 171 F.3d 1219, 1224 (9th Cir. 1999) (holding that a finding of bad faith may justify dismissal with prejudice).

## IV.    ANALYSIS

### A. THE DEBTOR'S CASE VIOLATES THE SINGLE ESTATE RULE

The Court agrees with the Trustee that the Second Case is void *ab initio* under the single estate rule. Here, the dipositive fact is undisputed: the Debtor filed the Second Case on September 11, 2025, while the First Case—also a Chapter 13 case filed by the same Debtor—remained pending. (Dkt. No. 1). That is a *per se* violation under *Turner*. In *Turner*, the Second Circuit held

10

that a debtor may not maintain two open bankruptcy cases simultaneously because "a debtor possesses only one estate for the purpose of trusteeship," and a later-filed case in violation of that principle is "null in void from its inception and subject to dismissal." *Turner*, 207 B.R. at 378-79. Consistent with *Turner*, courts in this Circuit have dismissed later-filed simultaneous cases as void *ab initio*, even where the earlier case was ultimately dismissed. *See Fuschi*, 2024 WL 4326942, at *3-5; *see also Truong*, 2009 WL 2929261, at *5. The same principle is widely recognized outside this Circuit as well. *See, e.g.*, *In re Berg*, 45 B.R. 899, 903 (B.A.P. 9th Cir. 1984) ("Th[e] property cannot be an asset of both estates simultaneously."); *Associates Financial Services Corp. v. Cowen*, 29 B.R. 888, 894 (Bankr. S.D. Ohio 1983) ("A debtor possesses only one estate for purposes of trusteeship.").

Although the First and Second Cases overlapped by only 18 days, that overlap is sufficient to warrant dismissal. Under the single estate rule, "any overlap of bankruptcy estates," even for a brief period, renders the later-filed case void. *In re Sanchez-Dobazo*, 343 B.R. 742, 744 (Bankr. S.D. Fla. 2006) (citing *Turner*, 207 B.R. at 378); *cf. In re Desai*, 282 B.R. 527, 533 (Bankr. M.D. Ga. 2002) (treating any overlap as *de minimis* where the second case was filed on the same day the first case was dismissed and permitting the second case to proceed). Courts have likewise characterized simultaneous filings as an abuse of process. In *Fountain*, for example, a bankruptcy court dismissed the debtor's second Chapter 13 case where the debtor filed it while a prior Chapter 13 case remained pending. *See In re Fountain*, 142 B.R. 135, 137 (Bankr. E.D. Va. 1992). The *Fountain* court reasoned that, while the Code does not expressly prohibit simultaneous filings, such filings constitute an "abuse of process." *Id*. As later courts have explained, "allowing simultaneous cases could orchestrate continuing injunctions against parties seeking § 362 relief, confuse or prejudice creditors, create repetitive litigation, and cause consternation." *In re JCP*

11

*Properties, Ltd.*, 540 B.R. 596, 608 (Bankr. S.D. Tex. 2015) (citing *Fountain*, 142 B.R. at 137); *see also In re Russell*, 348 B.R. 441, 448 (Bankr. S.D. Tex. 2006) (adopting the single estate rule).

The narrow exception to the single estate rule does not apply here. While a minority of courts have permitted simultaneous filings in limited circumstances, those cases generally involve petitions filed under different chapters serving distinct purposes. In *Saylors*, for instance, the Eleventh Circuit permitted a debtor to file a Chapter 13 case to address debts surviving a Chapter 7 liquidation before the Chapter 7 case had been formally closed. *See In re Saylors*, 869 F.2d 1434, 1437 (11th Cir. 1989); *see also Hodurski*, 156 B.R. at 353; *Kosenka*, 104 B.R. at 40; *Strause*, 97 B.R. at 22. The *Saylors* court declined to adopt a *per se* prohibition because the debtor sought relief under different chapters for distinct objectives, and a Chapter 7 discharge had issued before the second filing. *See Saylors*, 869 F.2d at 1437-38. Here, by contrast, the Debtor filed a second Chapter 13 petition while a prior Chapter 13 case remained pending. (Dkt. No. 1). The Second Case petition is near-identical to the First Case petition, and the same filing deficiencies exist across both cases. (*See* Deficiency Notice, Dkt. No. 5; *see also* Deficiency Notice, Prior Case Dkt. No. 8). The record thus reflects two concurrent cases filed by the same debtor, for the same purpose, under the same chapter, and addressing the same debts. (*Id*.) Those circumstances fall squarely within the single estate rule, and the circumstances that inform *Saylors*'s deviation from the majority rule are absent here.

### B. CAUSE EXISTS FOR DISMISSAL UNDER § 1307

Even apart from the single estate rule, the record establishes "cause" for dismissal under § 1307(c). The Court agrees with the Trustee that the Debtor has engaged in serial filings and has repeatedly failed to comply with basic Chapter 13 disclosure requirements. (Dkt. No. 15). As reflected in Yellow Grapes' stay relief motions, those filings have delayed the exercise of creditor

12

remedies and prejudiced the rights of parties in interest. (Dkt. No. 16; Prior Case Dkt. No. 17). The Court finds that these circumstances, considered in their totality, reflect bad faith.

First, the timing and sequencing of the Debtor's filings weigh in favor of finding bad faith. The Debtor commenced the First Case on the same day the Florida Court denied her Sale Objection, and filed the Second Case on the day the Court held a hearing on automatic dismissal. (Dkt. No. 1; Prior Case Dkt. No. 16). Although "the filing of a bankruptcy petition on the eve of a foreclosure or eviction" or any adverse legal action "does not, by itself, establish … cause" for dismissal, courts have found that such factors could be strong indicia of bad faith. *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 333 (Bankr. S.D.N.Y. 2001); *see also In re Syndicom Corp.*, 268 B.R. 26, 47 (Bankr. S.D.N.Y. 2001); *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Here, rather than curing the filing deficiencies in the First Case, the Debtor filed a new case under the same chapter and with the same defects. (Dkt. Nos. 1, 5). The Debtor's filing pattern thus supports the inference that the petitions were field primarily to invoke the automatic stay and frustrate enforcement of the Florida Foreclosure Proceeding, not to pursue a feasible reorganization under Chapter 13.

Second, the Debtor failed to timely file required documents in both cases. In the First Case, the Debtor did not cure the filing deficiencies within the 45-day period, and the case was dismissed under § 521(i)(1). (Prior Case Dkt. Nos. 8, 29). *See In re Tay-Kwamya*, 367 B.R. 422, 424 (Bankr. S.D.N.Y. 2007) (noting that "[i]f an individual chapter 7 or 13 debtor fails to file all documents required by section 521(a)(1) within 45 days after the date of the filing of the petition," the case "shall be automatically dismissed effective on the 46th day after … the petition [date]"). The Second Case repeated the same defects, and the deadline to cure likewise lapsed. (Dkt. No. 5). The Debtor's repeated noncompliance with basic disclosure requirements is inconsistent with a

13

good-faith reorganization effort. Such noncompliance supports a finding of "intent to delay or frustrate" the legitimate exercise of rights by Yellow Grapes. *Froman*, 566 B.R. at 647.

Third, the Debtor has not demonstrated that Mr. Ayoub has authority to act on her behalf at the time of filing, and that uncertainty further supports dismissal.[2] *See In re Richardson*, 643 B.R. 848, 854 (Bankr. D.S.C. 2022) (finding the debtor's representative failed to properly invoke attorney-in-fact authority where the power of attorney "was executed after the petition was filed"); *but see In re Maes*, 616 B.R. 784, 789 (Bankr. D. Colo. 2020) (permitting a representative to act on the debtor's behalf notwithstanding her failure to execute a valid power of attorney at the time of filing). Although Mr. Ayoub purports to act under a power of attorney, the power-of-attorney document filed in the Second Case was executed after the petition date. (Dkt. No. 26). The Debtor has not submitted certified documentation establishing Mr. Ayoub's authority as of the petition date. (*Id*.) At the December 18, 2025 hearing, the Trustee questioned Mr. Ayoub's authority to appear on the Debtor's behalf on that basis. (*Id*.; *see also* Dec. 18, 2025 Hr'g.). Mr. Ayoub acknowledged that defect and stated he would seek counsel, but no attorney has appeared. (*Id*.) On this record, the Debtor has not shown an ability to cure the standing defect and prosecute a Chapter 13 case in compliance with the Code and the Bankruptcy Rules.

Finally, the totality of the circumstances supports a finding of bad faith. The Debtor is a repeat filer. The Second Case was filed while the First Case remained pending. (Dkt. No. 1). The Second Case duplicated the same filing deficiencies that persisted in the First Case. (Dkt. No. 5). The filings also occurred against the backdrop of ongoing disputes with Yellow Grapes concerning

---

[2] The Court need not decide whether Mr. Ayoub holds a valid power of attorney. The question here is narrower: whether Mr. Ayoub's uncertain authority to act for the Debtor, viewed in light of the record as a whole, supports a finding of "cause" to dismiss under § 1307(c). The Court concludes that it does. Generally, the validity of a "power of attorney is governed by state law." *Shepard v. Epps*, 2024 WL 4109076, at *2 n.2 (S.D.N.Y. Aug. 26, 2024) (citing N.Y. Gen. Oblig. L. § 5-1511). Here, no party has litigated the issue through a formal motion or sought a definitive ruling on the validity of the power of attorney. The parties have not cited legal authority establishing that Mr. Ayoub's purported attorney-in-fact authority is either valid or invalid under the applicable state laws.

the ownership of the Property. (Dkt. No. 16). Taken together, these circumstances support the inference that the Second Case was filed primarily to invoke the protections of the automatic stay and to delay adverse legal consequences in the Florida Foreclosure Proceeding, rather than to complete a Chapter 13 reorganization in good faith. *See Froman*, 566 B.R. at 647-48 (holding that the relevant factors include serial filings, eve-of-foreclosure timing, two-party dispute, and filing to obtain the automatic stay); *see also C-TC 9th Avenue*, 113 F.3d at 1310.

For these reasons, the Court finds that the Debtor's filings were made in bad faith, and that "cause" exists for dismissal under § 1307(c). Given the timing of the Debtor's serial filings, the duplicative nature of the Second Case, and the repeated failure to comply with basic Chapter 13 disclosure requirements, the Court agrees with the Trustee that a one-year bar to refiling is justified to prevent future abusive filings. (Dkt. No. 15). *See, e.g.*, *In re Herrera*, 194 B.R. 178, 189 (Bankr. N.D. Ill. 1996) (finding cause to impose a one-year bar to refiling where there was a persistent pattern of abusive, multiple filings); *In re Casse*, 219 B.R. 657, 662 (Bankr. E.D.N.Y. 1998); *cf. In re Caldrello*, 2024 WL 1707481, at *3 (Bankr. D. Conn. Apr. 19, 2024) (imposing a two-year bar to refiling where the debtor's abuses were particularly egregious).

## V.    CONCLUSION

For the foregoing reasons, the Motion is **GRANTED**, with a one-year bar to refiling. Because the case is dismissed, all pending motions, including Yellow Grapes' Second Stay Relief Motion, are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated: January 15, 2026
      New York, New York               /s/ John P. Mastando III
                                                HONORABLE JOHN P. MASTANDO III
                                                UNITED STATES BANKRUPTCY JUDGE